UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MICHAEL SANTANA,                                    **FIRST AMENDED COMPLAINT**

                                                    **15 CV 424 (KPF)**
                                                    **ECF Case**

                            Plaintiff,

                  vs.

The CITY OF NEW YORK, POLICE OFFICERS
COURTNEY BURNS, Shield 4761,
JORGE MONGE, Shield 6417, and
SERGEANT CARLOS DELEON, Shield 3650,               **JURY TRIAL DEMANDED**
in their individual and official capacities,

                            Defendants.
----------------------------------------------------------x

Plaintiff Michael Santana, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.  This civil rights action arises from the brutal and false arrest of

Michael Santana ("Plaintiff") after his car was baselessly stopped at night by NYPD

officers in the Bronx. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983

("Section 1983") against the individual defendants for First Amendment retaliation,

excessive force, false arrest and imprisonment, illegal search, and failure to intervene,

and a *Monell* claim against the City of New York for the same constitutional violations.

Additionally, Plaintiff asserts analogous claims under New York Law against the

individual defendants, and against the City of New York under the doctrine of *respondeat

superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and

attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the First and Fourth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   Plaintiff Michael Santana is a 25-year-old African-American male, gainfully employed, with no criminal record; he is a United States citizen, and a resident of Connecticut.

7.   The individually named defendants Police Officer Courtney Burns (Shield # 4761) ("PO Burns"), Sergeant Carlos Deleon (Shield # 3650) ("Sgt. Deleon"), and Police Officer Jorge Monge ("PO Monge") (collectively, the "individual defendants") are and

were at all times relevant herein officers, employees and agents of the New York City
Police Department ("NYPD").

8.      On the date of the incident giving rise to this complaint, the individual
defendants were assigned to the Bronx Patrol Borough, in an Impact Zone working out of
the 52nd Precinct.

9.      Each individual defendant is sued in his individual and official capacity.  At
all times mentioned herein, each individual defendant acted under the color of state law,
in the capacity of an officer, employee, and agent of defendant City of New York
("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of
New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD,
which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York
within ninety days of the incident, being assigned Claim # 2014PI021643.  At least 30
days have elapsed since the service of the Notice of Claim, and adjustment and payment
has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal
Law § 50-h, which hearing was held on September 5, 2014.

13.     This action has been commenced within one year and ninety days after the
occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.    On the evening of June 20, 2014, Plaintiff drove his car, a 1997 Honda Civic ("the Honda"), to see his friend Cessie Ramos, who lives in Bronx, NY.

15.    Driving safely and obeying all traffic laws, Plaintiff drove down Grand Concourse in the Bronx and, around 10:30 PM, turned left onto Valentine Avenue.  Soon after, Plaintiff saw a marked NYPD van ("the Van") behind him, flashing its lights and sounding its siren.

16.    Plaintiff pulled over to the side of the road around Valentine Avenue and 192nd Street.  PO Burns and PO Monge emerged from the Van and approached the Honda from both sides, shining their flashlights at Plaintiff.  It was clear to the approaching officers that Plaintiff was alone and sober, with nothing suspicious or unlawful inside his Honda.

17.    PO Monge, approaching from the driver's side, asked Plaintiff for his license and registration.  Plaintiff promptly complied with this order, retrieving his license from his wallet and his registration from his glove compartment.  As he did so, Plaintiff asked why he was pulled over, to which he was told, "We'll tell you in a little while."

18.    Plaintiff stated that he believed he had the right to know why he was being pulled over.  Upon hearing this, PO Monge and PO Burns threatened to pull Plaintiff out of the Honda.

19.    Plaintiff was confused by the fact that the officers could not or refused to state a reason for stopping his car.  Holding his license and registration and offering it to PO Monge, Plaintiff again asked why he was being stopped.

20.    This question, asked again, agitated PO Monge and PO Burns, who opened the doors of the Honda, as if preparing to violently pull Plaintiff out of the car.  Not

wanting any violence, Plaintiff said "OK!  I don't want any problems, just take the ID and registration."

21.     Plaintiff's tone when asking "Why are you stopping me?" and "What did I do wrong?" was assertive but polite; there was nothing hostile, menacing, or aggressive in Plaintiff's voice or in his simple desire to know the basis of the stop.

22.     PO Monge and PO Burns took Plaintiff's driver's license and registration to the Van, where they conferred with Sgt. Deleon, who was sitting inside.

23.     After the conference inside the Van, Plaintiff heard Sgt. Deleon approach the Honda and order Plaintiff to exit the vehicle.  Shocked and worried, Plaintiff asked, "What's going on?  Nobody has told me anything."

24.     Sgt. Deleon then yelled, "Get the fuck out of the vehicle and give me your keys!" and grabbed Plaintiff, yanking him out of the Honda.

25.     Plaintiff was not resisting but became tangled in his fastened seatbelt.  Sgt. Deleon dragged Plaintiff out, then slammed him against the Honda, and handcuffed him behind his back.

26.     Sgt. Deleon patted down and searched Plaintiff, taking Plaintiff's cell phone, and finding absolutely nothing illegal or suspicious.  In the course of being unlawfully arrested and searched, Plaintiff asked "What's going on?  I have done nothing wrong."

27.     Eventually Plaintiff was told that he was arrested because he "refused to give ID," but this fabricated charge was only invented when the individual defendants realized they needed to justify their false arrest of Plaintiff.

28.     The individual defendants truly arrested Plaintiff because he asked too many questions which bluntly challenged the arbitrary, baseless, and illegal stop.

29.     Plaintiff was never issued a traffic ticket and never given an explanation as to why the individual defendants stopped his Honda.

30.     After being handcuffed, Plaintiff was taken to the Van so that PO Burns, supervised by Sgt. Deleon, could conduct a search of the Honda – another unlawful search that yielded no contraband or fruits of crime whatsoever.

31.     Inside the Van, Plaintiff again inquired why he had been stopped in the first place, to which PO Monge – frustrated by the question – threatened to fight Plaintiff outside if Plaintiff didn't shut up.

32.     While Plaintiff was handcuffed, he experienced terrible pain in his left arm. Because of an injury four years earlier, Plaintiff has a metal rod from his left shoulder to his elbow.  While he was handcuffed behind his back, his shoulder was forced to twist, and the metal in his shoulder painfully scraped against the tendons.

33.     Plaintiff complained several times about this pain in his left arm, but Sgt. Deleon only made the handcuffs tighter, and the other individual defendants refused to relieve the pain.

34.     Plaintiff was transported in the Van to the 52nd Precinct ("the Precinct"), 3016 Webster Avenue in the Bronx, where he was processed, fingerprinted, photographed, and held in the holding cells.

35.     Around 2 AM, Plaintiff was transported to Central Booking in Bronx County Criminal Court.  There, Plaintiff was told he was arrested for Obstruction of Governmental Administration, in violation of Penal Law Section 195.05, on the grounds that he refused to give his ID to the police.

36.     Plaintiff remained in Bronx Central Booking until 2:30 PM on June 21, 2014, spending around sixteen hours in custody.

37.     The Bronx County District Attorney wisely declined to bring criminal charges against Plaintiff, who was not ordered to return to court on any matter.

38.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

39.      There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

40.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

41.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But when it comes to making false statements on court documents, NYPD officers almost never face discipline.

42.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

43.     The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

44.     Moreover, the NYPD fails to educate and train officers in the First Amendment, specifically the right of citizens to ask questions and challenge NYPD behavior in, say, the course of a traffic stop.

45.     Those who dare question NYPD behavior are routinely punished, more likely to be arrested, detained, and maliciously prosecuted than those who remain silent and docile in the clutches of abuse and injustice.

46.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the First and Fourth Amendments to the United States Constitution;

        b.   Severe emotional trauma, distress, degradation, and suffering.


**SECTION 1983 CLAIMS**

**FIRST CLAIM**

**Deprivation of Federal Civil Rights Under Section 1983**

47.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

48.    All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

49.    All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the First and Fourth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

50.    The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First and Fourth Amendments of the United States Constitution.

51.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### Illegal Search Under Section 1983

52.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

53.    By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from unlawful searches.

54.    Without probable cause, a warrant, or consent, the individual defendants searched through Plaintiff's car, where Plaintiff had an expectation privacy.

55.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under Section 1983

56.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

57.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

58.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

59.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

**FOURTH CLAIM**

**Excessive Force Under Section 1983**

60.      Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

61.     By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

62.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

**FIFTH CLAIM**

**First Amendment Retaliation Under Section 1983**

63.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

64.     By the actions described, the individual defendants retaliated against Plaintiff because he lawfully exercised his First Amendment right to free speech – arresting and

brutalizing him for daring to question his detention by the individual defendants.  In doing so, the individual defendants chilled Plaintiff's exercise of his right to free speech.

65.    As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SEVENTH CLAIM

### Failure to Intervene Under Section 1983

66.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

67.    Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

68.    The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

69.    As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## EIGTH CLAIM

### Municipal Liability Under Section 1983

70.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

71.    By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its

fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

72.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PENDENT STATE CLAIMS

### FIRST CLAIM

**False Imprisonment under N.Y. State Law**

73.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

75.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

76.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

77.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

78.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

79.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Battery Under N.Y. State Law

80.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

81.     As detailed above, the individual defendants intentionally touched Plaintiff in an offensive and harmful manner, and they intentionally subjected him to offensive and harmful contact.

82.     As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)

83.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

84.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

85.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

86.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

87.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

88.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Respondeat Superior Under N.Y. State Law

89.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

90.     Defendant City is the employer of the individual defendants.

91.     Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

92.     As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.     An order awarding compensatory damages for Plaintiff Michael Santana in an amount to be determined at trial;

b.     An order awarding punitive damages in an amount to be determined at trial;

c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.     Such other and further relief as this Court may deem appropriate.

DATED:      May 21, 2015                    _____/s/_____
            New York, New York              CYRUS JOUBIN, ESQ.
                                            88 Pine Street, 14th Floor
                                            New York, NY 10005
                                            (703) 851-2467
                                            joubinlaw@gmail.com
                                            Attorney for Michael Santana